**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CESAR ASENCIO,<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING, Field Office Director,<br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility,<br>DAVID VENTURELLA, Acting Director U.S. Immigrations and Customs Enforcement,<br>MARKWAYNE MULLIN, U.S. Secretary of Homeland Security,<br>TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | Case No. 1:26-cv-13161<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Agency Number: 097-399-600 |

## INTRODUCTION

1. Petitioner Cesar Asencio ("Petitioner" or "Mr. Asencio") brings this petition for a writ of habeas corpus to seek enforcement of his rights as a member of the Deferred Action Class certified in *Immigration Center for Women and Children v. Noem* ("*ICWC*"), a class action brought on behalf of immigrant victims of domestic violence, trafficking, and other serious crimes. *Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026) ("*ICWC* PI Order"). Despite being in a valid period of deferred action status in connection with a pending U visa petition, Mr. Asencio remains unlawfully detained by Respondent U.S. Immigration and Customs Enforcement ("ICE") at the Plymouth Correctional Facility. This contravenes the *ICWC* PI Order, in which the court certified a nationwide class and issued a ruling staying ICE's policy of refusing to "honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas." *Id.* at *47. As the court held, "a

person with deferred action should neither be removed nor detained for immigration enforcement (removal) purposes." *ICWC* PI Order at *40.

2. Separately, Respondents' failure in honoring the protections of deferred action also violates the U.S. Constitution, the Administrative Procedure Act ("APA"), and the *Accardi* Doctrine.

3. Mr. Asencio is a survivor of felonious assault, specifically assault and battery with a dangerous weapon in violation of Massachusetts General Laws chapter 265, section 15A. *See* Exhibit 1, Form I-918 Supplement B. In approximately 2022, Mr. Asencio applied for a U visa, which Congress made available to noncitizens who have suffered substantial harm as a result of having been a victim of certain crimes and who have been helpful, are being helpful, or are likely to be helpful in the investigation or prosecution of the crime. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).

4. In March 2025, U.S. Citizenship and Immigration Services ("USCIS") granted Mr. Asencio deferred action and work authorization in relation to Mr. Asencio's pending U visa petition. *See* Exhibit 2, Copy of Employment Authorization Document. USCIS has not revoked Mr. Asencio's deferred action status, which is valid until at least February 28, 2029. *Id.*

5. "Approval of deferred action status means that. . . no action will thereafter be taken to proceed against an apparently deportable [non-citizen], even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AAADC*").

6. Despite being in valid deferred action status, immigration authorities arrested Mr. Asencio on October 22, 2025 while he was driving with his partner and their one-month-old child. They had just left their home, when officers pulled in front of him in an unmarked vehicle. Mr. Asencio was terrified for their life and thought someone was going to hurt them. He was taken out

of the vehicle and arrested.

7. As a result of Respondents' actions, Mr. Asencio has languished in detention for over eight months. He suffers from depression and anxiety, and has been separated from his baby, who is now ten months old.

8. Accordingly, Mr. Asencio respectfully requests the court issue a writ of habeas corpus and order his release**.**

## **JURISDICTION**

9. A writ under 28 U.S.C. § 2241 may issue if, among other things, a person "is in custody under or by color of the authority of the United States," or is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

10. Mr. Asencio is in the physical custody of Respondents under color of the authority of the United States. Mr. Asencio is detained by ICE at Plymouth County Correctional Facility in Plymouth, Massachusetts.

11. This Court has jurisdiction under 28 U.S.C. § 2241(c) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

12. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## **VENUE**

13. Venue is proper because Mr. Asencio is currently detained in the District of Massachusetts.

14. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and/or agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

15. Petitioner Cesar Asencio is a citizen of Guatemala who has resided in the United States since his most recent arrival in 2007. He is currently detained at Plymouth County Correctional Facility ("PCCF"). Mr. Asencio applied for U nonimmigrant status in 2022. USCIS granted Mr. Asencio deferred action in approximately February 2025, valid until February 2029. Despite this deferred action status, Respondents continue to unlawfully detain Mr. Asencio.

16. Respondent David Wesling is the New England Field Office Director for ICE. He is a legal custodian of Mr. Asencio and is named in his official capacity.

17. Respondent Antone Moniz is the Superintendent of Plymouth and has physical and administrative custody over Mr. Asencio. He is named in his official capacity.

18. Respondent David Venturella is the Acting Director of ICE. He is a legal custodian of Mr. Asencio and is named in his official capacity.

19. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security. He is a legal custodian of Mr. Asencio and is named in his official capacity.

20. Respondent Todd Blanche is the Acting Attorney General of the United States and administers the Department of Justice, including EOIR, the BIA, and the Immigration Courts.

## FACTUAL ALLEGATIONS

21. Mr. Asencio was born in Guatemala on December 25, 1984. At an unknown date, he entered the United States and was ordered removed in 2003. He re-entered the United States most recently in 2007 and has resided continuously in Massachusetts since that date.

22. He was two U.S. citizen children, a 17-year-old son and 10-month-old son.

23. On September 14, 2014, Mr. Asencio was the victim of felonious assault. Ex. 1. He was randomly attacked by two men with a baseball bat who struck him on the neck and mouth area. *Id.* They stole his phone and cash. *Id.* Mr. Asencio sustained serious injuries, including a broken jaw and nerve damage, and had to have his jaw wired shut. *Id.*

24. Mr. Asencio reported the incident to the police. Ex. 1. He cooperated with the authorities throughout the pendency of the investigation. *Id.*

25. In 2022, Mr. Asencio filed an I-918 Petition for U Nonimmigrant Status, which remains pending with USCIS.

26. Mr. Asencio has never been convicted of a crime. His dismissed and pending charges were conveyed in his U visa petition and took place prior to the grant of deferred action.

27. USCIS granted Mr. Asencio deferred action status in early 2025, based on the pending petition for a U visa being bona fide.

28. USCIS also issued Mr. Asencio an Employment Authorization Document ("EAD") based on Mr. Asencio's deferred action status. The EAD is valid from February 27, 2025 and February 29, 2029.

29. After he was arrested by ICE, Mr. Asencio was placed in withholding-only proceedings after an Immigration Judge ("IJ") found that he had a reasonable fear of return to Guatemala. His application for statutory withholding of removal was granted by the IJ on May 12, 2026. However, the Department of Homeland Security ("DHS") filed an appeal of the IJ's decision on June 8, 2026. Their appeal remains pending.

30. Courts have "consistently held that deferred action means the Government agency 'takes no action to proceed against an apparently deportable [noncitizen] based on a prescribed set

of factors generally related to humanitarian grounds,'" an interpretation that "finds strong support in Supreme Court precedent, circuit authority, and USCIS policy." *Sepulveda Ayala v. Bondi*, No. 2:25-CV-01063-JNW-TLF, 2025 WL 2084400, at *7-8 (W.D. Wash. July 24, 2025) (collecting cases) (citations omitted); *AAADC* at 484 ("Approval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable [non-citizen], even on grounds normally regarded as aggravated.").

31. Because ICE has detained Mr. Asencio and is actively proceeding to seek Mr. Asencio's removal, which are clearly actions to proceed against Mr. Asencio, it is ignoring USCIS's grant of deferred action. Accordingly, ICE's efforts to detain and deport Mr. Asencio amounts to a de facto revocation of such status.

32. To date, USCIS has not issued Mr. Asencio any Notice of Intent to Deny or Revoke its grant of deferred action.

33. As described below, deferred action issued by USCIS based on a pending U visa petition can only be revoked by USCIS. To date, neither Respondents nor USCIS have provided Mr. Asencio any hearing at which they allege that USCIS's grant of deferred action should be revoked, nor have they provided Mr. Asencio any opportunity to be heard on the issue of a potential revocation of deferred action.

## LEGAL FRAMEWORK

### *CREATION OF THE U VISA*

34. In 1994, Congress passed the Violence against Women Act ("VAWA") to address the widespread problem of noncitizens remaining in relationships with abusers who held the key to their eligibility for lawful immigration status in the United States. *See* Violent Crime Control and Law Enforcement Act of 1994, Title IV, Pub. L. 103-322, 108 Stat. 1796 (September 13,

1994). "[T]he goal of the bill is to 'permit[ ] battered immigrant women to leave their batterers without fearing deportation.'" *Hernandez v. Ashcroft*, 345 F.3d 824, 841 (9th Cir. 2003) (quoting H.R. Rep. No. 103–395, at 25).

35. In 2000, with overwhelming bipartisan support, Congress passed the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), which reauthorized VAWA through the Violence Against Women Act of 2000 ("VAWA 2000"). The VTVPA dramatically expanded protections for immigrant survivors.

36. Through Title 5 of VAWA 2000 – the Battered Immigrant Women Protection Act of 2000 ("BIWPA") – Congress created the U visa, providing a pathway to U.S. citizenship to noncitizen survivors of qualifying crimes who assist law enforcement in investigating or prosecuting those crimes. *See* BIWPA § 1513(a)(2)(B), (b); 8 U.S.C. § 1101(a)(15)(U).

37. A noncitizen is eligible for a U visa if (1) the petitioner "suffered substantial physical or mental abuse as a result of having been a victim of" certain explicitly identified types of crime; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been helpful, is being helpful or is likely to be helpful" to government officials regarding the criminal activity: and (4) the crime occurred in the United States or violated U.S. law. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). Children, spouses, and, for petitioners younger than 21, siblings and parents, may also receive U visas as derivative beneficiaries of the primary petitioner. 8 C.F.R. § 214.14(a)(10).

38. Among Congress's stated purposes in creating the U visa were (1) "to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes. . . committed against [noncitizens], while offering protection to victims of such offenses in keeping with the humanitarian interests of

the United States," and (2) to "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused [noncitizens] who are not in lawful immigration status." BIWPA § 1513(a)(2).

39. As DHS has acknowledged, Congress—

> created the U [visa] program out of recognition that victims without legal status may otherwise be reluctant to help in the investigation or prosecution of criminal activity. Immigrants, especially women and children, can be particularly vulnerable to criminal activity like human trafficking, domestic violence, sexual assault, stalking, and other crimes due to a variety of factors, including but not limited to: language barriers, separation from family and friends, lack of understanding U.S. laws, fear of deportation, and cultural differences.[1]

40. Congress went further than simply creating the U visa. Congress additionally authorized DHS to waive virtually *any* ground of inadmissibility to U visa petitioners. *Id.* § 1513(e); 8 U.S.C. § 1182(d)(14).

41. In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Pub. L. No. 110-457, 122 Stat. 5044. The TVPRA added § 237(d) to the Immigration and Nationality Act ("INA"), which authorizes DHS to issue a stay of any removal order against a U or T visa petitioner if the petition "sets forth a prima facie case for approval." 8 U.S.C. § 1227(d)(1). Any such stay remains in effect until the U or T visa is approved or denied, during which time the applicant "shall not be removed." 8 U.S.C. §§ 1227(d)(1)-(3).

42. Moreover, the TVPRA authorized employment for U visa petitioners who had "a pending, bona fide application" awaiting full adjudication. TVPRA § 201(c) (codified at 8 U.S.C.

---

[1] DHS, *U and T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges, and Other Government Agencies*, at 4, available at https://niwaplibrary.wcl.american.edu/wp-content/uploads/DHS-U-and-T-Visa-Law-Enforcement-Resource-Guide-11.30.15.pdf (last checked July 9, 2026).

§ 1184(p)(6)).

***U VISA INTERIM BENEFITS: DEFERRED ACTION AND WORK AUTHORIZATION PURSUANT TO THE BONA FIDE DETERMINATION AND WAITING LIST PROCESSES***

43. 8 U.S.C. § 1226(a) requires the arrest of immigrants to be effectuated by a warrant issued by the Attorney General of the United States. Under § 1226(a) and its associated regulations, that authority has been delegated to DHS who must issue a Form I-200, Warrant of Arrest. *See* 8 C.F.R. 1236.1(b).

44. In 2007, DHS promulgated regulations setting forth the process for adjudicating U visa petitions. *See* Interim Rule, 72 Fed. Reg. 53014 (Sept. 17, 2007). Because there is a statutory limit of 10,000 visas that may be conferred annually, 8 U.S.C. § 1184(p)(2), a significant, years-long backlog for U visa petitions exists. To address the backlogs, these DHS regulations created interim benefits for petitioners while they wait. The regulations require that crime victims who are not granted U visas "due solely to the cap . . . must be placed on a waiting list." 8 C.F.R. § 214.14(d)(2). USCIS must "grant deferred action" to individuals placed on the waiting list until a U visa becomes available. *Id.* Wait-listed individuals are also eligible for work authorization. *Id.*

45. In 2021, as a means to implement the provision of 8 U.S.C. § 1184(p)(6) authorizing employment for bona fide U visa petitioners, USCIS created a formal Bona Fide Determination ("BFD") process, which is reflected in the USCIS Policy Manual ("PM").[2]

46. In the BFD process, rather than the full adjudication required for the waiting-list process, USCIS conducts a streamlined initial review of the petition to determine whether it is "bona fide." PM, vol. 3, pt. C, ch. 4. The determination is "based on the petitioner's compliance

[2] "The USCIS Policy Manual is the agency's centralized online repository for USCIS' immigration policies." PM, available at https://www.uscis.gov/policy-manual (last checked July 9, 2026).

with initial evidence requirements and successful completion of background checks," after which USCIS "considers any national security and public safety risks, as well as any other relevant considerations," in deciding whether to issue an EAD and deferred action. PM, vol. 3, pt. C, ch. 5. "If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action." PM, vol. 3, pt. C, ch. 5.C.

47. Petitioners granted a BFD EAD and deferred action are placed in the queue to wait for a U visa to become available as if they were on the U visa waiting list.

48. A BFD EAD and deferred action are valid for four years and renewable. PM vol. 3, pt. C, ch. 5.

49. USCIS identifies four circumstances when early revocation of deferred action is appropriate: (1) "if USCIS determines a national security or public safety concern is present," (2) "if USCIS determines the BFD EAD and deferred action is no longer warranted," (3) if "the Form I-918 Supplement B law enforcement certification is withdrawn" by the certifying agency, or (4) "USCIS determines the prior BFD EAD was issued in error." *Id*.

50. For those deemed ineligible for a BFD EAD and deferred action, USCIS proceeds to a full adjudication of the petition and determines whether any applicable inadmissibility grounds are waivable. If the petition is approvable and a U visa is not available due solely to the annual cap, USCIS then places petitioners on the U visa waiting list and must confer deferred action until a U visa becomes available or a change in circumstances causes USCIS to remove the petitioner from the waiting list. PM, vol. 3, pt. C, ch. 4.

51. Because deferred action for those on the waiting list is mandatory by regulation, it can only be revoked due to a material change in eligibility for the U visa. *See* 8 C.F.R. §

214.14(d)(2)-(3).

52. Pursuant to USCIS policy, *only* USCIS may revoke deferred action conferred in connection with a U visa petition. PM vol. 3, pt. C, ch. 5.; 8 C.F.R. § 214.14(d)(2)-(3).

53. Once a U visa finally becomes available to someone with a BFD EAD or someone on the waiting list, USCIS will conduct another background check to screen for any new material facts affecting eligibility, and if none, approve the visa. PM, vol. 3, pt. C, ch. 7.A-B. The visa recipient is authorized to work incident to status and may apply for lawful permanent residence three years later. 8 C.F.R. § 274a.12(19)-(20); 8 C.F.R. § 245.24(b).

***UNTIL 2025, DECADES OF AGENCY POLICY GUIDANCE PRESUMPTIVELY PROTECTED U VISA PETITIONERS FROM IMMIGRATION ENFORCEMENT***

54. Consistent with Congress's intent to encourage noncitizen victims to report crime, for nearly two decades, DHS policies have generally required ICE to refrain from pursuing removal efforts against people with pending U visa petitions, like Mr. Asencio, absent serious public safety concerns.[3] These include written policies issued in 2011 and 2021. *See* John Morton, ICE Policy Statement 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses,*

[3] *See* Memorandum from William J. Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *Prosecutorial Discretion* (Oct. 24, 2005), available at https://www.aila.org/library/ice-prosecutorial-discretion-memo; Memorandum from William Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *VAWA 2005 Amendments to the Immigration and Nationality Act and 8 U.S.C. § 1367* (Feb. 1, 2007), available at https://www.ice.gov/doclib/foia/policy/memoVAWA_2005_INA_Amendments_02.01.2007.pdf; Memorandum of David J. Venturella, Acting Director, Detention and Removal Operations, to Field Office Directors, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants*, (Sept. 24, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf; Memorandum from Peter S. Vincent, Principal Legal Advisor, to OPLA Attorneys, *Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal* (Sept. 25, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/vincent_memo.pdf; ICE Directive 11005.2, *Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners*, (Aug. 2. 2019), available at https://www.ice.gov/doclib/foia/policy/11005.2_StayRemovalReqRemProcUVisaPetitioners.pdf.

*and Plaintiffs* (Jun. 17, 2011) ("2011 Policy"), available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf (last checked July 9, 2026), and ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) ( "2021 Directive"), available at https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf (last checked July 9, 2026).

55. As with prior DHS policy, the 2011 Policy reiterated that "[a]bsent special circumstances or aggravating factors," it is generally "against ICE policy to initiate removal proceedings against" known victims of crime. 2011 Policy at 1. Notably, the 2011 Policy explains "that a flag now exists in" DHS systems "to identify those victims of domestic violence, trafficking, or other crimes who already have filed for . . .victim-based immigration relief." 2011 Policy at 3.

56. The 2021 Directive continued ICE's longstanding policy to "refrain from taking civil enforcement action against" individuals "known to have a pending application" for "victim-based immigration benefits," "absent exceptional circumstances" such as national security or public safety concerns. 2021 Directive at 1-2, 9. If such an application was pending, ICE was to "defer" enforcement until USCIS adjudicates the petition or issues a negative interim adjudication. *Id*. at 2. Agents were to request expedited prima facie adjudications from USCIS for people in ICE custody, and eligibility "for victim-based immigration benefits . . . must be considered" a "positive discretionary factor." *Id*. at 2, 9.

57. On January 30, 2025, ICE issued a policy directive that, for the first time in the agency's history, authorized the routine detention and removal of noncitizen victims of crime who had petitioned for victim-based immigration benefits, such as the U visa. *See* ICE Policy

Number 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"), available at https://www.ice.gov/doclib/foia/policy/11005.4.pdf (last checked July 9, 2026).

58. The 2025 Guidance became "effective immediately and remains in effect until superseded." 2025 Guidance at 1. It explicitly "rescinded and superseded" the 2021 Directive and 2011 Policy, thereby reneging the government's promise to protect noncitizen crime victims and greenlighting a deportation campaign that ignores their potential eligibility for relief.

59. Specifically, the 2025 Guidance requires, when ICE officers seek to detain or remove individuals with pending U visa petitions, that they (1) merely "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised," (2) "consult with" local ICE attorneys only "to ensure any such action is consistent with applicable legal limitations," (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor," and (4) will not "routinely request expedited adjudications from USCIS," but may do so only when "it is in ICE's best interests." 2025 Guidance at 2-3.

60. The 2025 Guidance marked an abrupt about-face from longstanding DHS practices, under which immigration agencies generally refrained from enforcement against crime victims absent serious adverse factors.

61. As a result of the 2025 Guidance, ICE now engages in an unlawful policy and practice under which it routinely detains and deports people who have valid grants of deferred action from USCIS in connection with pending U or T visa petitions.[4] Neither Respondent ICE

---

[4] A T visa petition is a separate survivor-based immigration benefit program, for survivors of severe forms of human trafficking.

nor USCIS provides any notice or opportunity to be heard regarding whether such deferred action should be revoked prior to doing so. This policy, referred to herein and in *ICWC* as the De Facto Revocation Policy, unlawfully renders deferred action status meaningless.

***PETITIONER IS A DEFERRED ACTION CLASS MEMBER IN ICWC.***

62. On October 14, 2025, several individual plaintiffs and non-profit legal organizations serving immigrant survivors filed a class action complaint in *ICWC*, challenging the lawfulness of the 2025 Guidance and, as relevant here, the De Facto Revocation Policy. *See* Compl. ¶¶ 200-233 *Immigr. Ctr. for Women & Child. v. Noem, et al.*, No. 2:25-cv-09848-AB-AS (C.D. Cal. Oct. 14, 2025) [Dkt. 1].

63. On May 20, 2026, the U.S. District Court for the Central District of California granted plaintiffs' Motion for Class Certification and granted in part plaintiffs' Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction. *ICWC* PI Order.

64. As part of its ruling, the court provisionally certified three classes, including, as relevant here, the Deferred Action Class,[5] and stayed the De Facto Revocation Policy pursuant to 5 U.S.C. § 705 as to Deferred Action Class members. *Id.* at *47 ("Pursuant to 5 U.S.C. § 705, the Court hereby **STAYS** the De Facto Revocation Policy, under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas.").

65. Specifically, the court concluded that plaintiffs were likely to prevail on the merits of their claims that the De Facto Revocation Policy is arbitrary and capricious under the APA, violates the *Accardi* doctrine requiring agencies to follow their own procedures, and violates

[5] The Deferred Action Class is defined as: "All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status." *ICWC* PI Order at *47.

class members' due process rights under the Fifth Amendment. *Id.* at *37-40 ("Because ICE lacks authority to revoke USCIS grants of deferred action status, ICE cannot de facto revoke that status."); *id.* at *40 (holding ICE violated class members' "right to due process because pursuant to the Policy, Defendants have pursued immigration enforcement actions against them despite their deferred action status."). As a result, ICE may not detain Deferred Action Class members.

66. Here, Mr. Asencio is a member of the Deferred Action Class in *ICWC* because he:

a. is an individual to whom USCIS has granted deferred action based on a pending U visa petition; and

b. during the authorized period of deferred action, was detained by ICE without being provided notice and an opportunity to be heard regarding the potential revocation of that deferred action status. *Id.* at *47; *see also* n.5 *supra*.

67. Accordingly, the De Facto Revocation Policy, "under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas," may not be applied to Mr. Asencio. *Id.* at *47. **Therefore, immediate release is warranted.**

## <u>CLAIMS FOR RELIEF</u>

### COUNT ONE
### Violation of APA, 5 U.S.C. § 706(2)(A)
### (Violation of the *ICWC* PI ORDER)

68. Mr. Asencio repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

69. Under the APA, courts "shall . . . hold unlawful and set aside agency action . . .found to be . . .not in accordance with law." 5 U.S.C. § 706(2)(A).

70. Respondent's detention of Mr. Asencio constitutes final agency action under the APA. 5 U.S.C. § 551(13), 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

71. In *ICWC,* the court concluded that plaintiffs were likely to succeed on their claim that the De Facto Revocation Policy is arbitrary and capricious and not in accordance with law under the APA. *ICWC* PI Order at *37.

72. As a result, the court stayed the De Facto Revocation Policy, "under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas." *Id.* at *47.

73. The stay applies in favor to members of the Deferred Action Class, which includes Mr. Asencio. *Id.*

74. Respondents detained Mr. Asencio pursuant to the stayed De Facto Revocation policy.

75. Accordingly, Respondents' detention of Mr. Asencio is not in accordance with law in violation of the APA, as it directly contravenes the § 705 relief issued in the *ICWC* PI Order.

**COUNT ONE**
**Violation of the Fifth Amendment**
**(Violation of Procedural Due Process)**

76. Mr. Asencio repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

77. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The essence of due process is the requirement that a person in jeopardy of serious loss" receive

"notice" and "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333, 348-49 (citations omitted).

78. Here, Mr. Asencio has a protected liberty interest in his deferred action. *See ICWC* PI Order at *40.

79. In determining what process is due when ICE revokes deferred action status through its enforcement actions, courts must apply the *Mathews* three-part balancing test, considering (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest . . .that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Here, the *Mathews* balancing test comes out strongly in favor of Mr. Asencio.

80. First, the private interests that will be affected are profound. First, Mr. Asencio's liberty is at stake. There is no question that freedom from government imprisonment is a significant private interest that "lies at the heart of the liberty that" Due Process protects. *Zadvydas*, 533 U.S. at 690. Moreover, Mr. Asencio's employment authorization, together with other benefits, is vital to Mr. Asencio's livelihood, but is now at risk due to ICE's de facto revocation of deferred action. *See* 8 C.F.R. § 274a.12(c)(14). Where "continued possession" of benefits has "become essential in the pursuit of a livelihood," and revocation of those benefits "involves state action that adjudicates important interests," they "are not to be taken away without [] procedural due process." *Bell v. Burson*, 402 U.S. 535, 539 (1971).

81. In addition, Mr. Asencio's "private interest in avoiding removal or detention pending removal is great." *ICWC* PI Order at *41. He is in custody more than an hour away from his home and his family; he is not able to maintain his employment and support his family; and,

despite being in custody for a civil offense, he is detained with, and subject to, the same rules as those incarcerated at Plymouth County Correctional Facility for criminal offenses. *See Hernandez Lara*, 10 F.4th at 28 ("[Petitioner] was incarcerated alongside criminal inmates at the Strafford County Jail for ten months. During that time, she was separated from her fiancé and unable to maintain her employment."); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes."); *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025) ("[Petitioner] is being held at the Plymouth County Correctional Facility, a 'secure facility for offenders being held or sentenced for crimes.' His confinement alongside individuals convicted of crimes, where he has neither been charged with nor convicted of any criminal offense, amplifies the burden effected by his ongoing detention.") (footnote omitted).

82. Second, "the risk of an erroneous deprivation of" these interests "through the procedures used" is extremely high, compared to "the probable value" of a pre-deprivation process where Respondents have provided *no process at all* before engaging in immigration enforcement that effectively revoked Mr. Asencio's deferred action. *Mathews*, 424 U.S. at 335. "[T]he practice of automatic termination" of deferred action "creates an unacceptably high risk of erroneous deprivation." *Inland Empire-Immigrant Youth Collective v. Nielsen,* No. EDCV 17-2048 PSG (SHKx), 2018 WL 4998230, at *19 (C.D. Cal. Apr. 19, 2018) (emphasis added); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *1 (C.D. Cal. Feb. 26, 2018) (granting classwide injunction for nationwide class in same case).

83. Third, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," are minimal. *Mathews*, 424 U.S. at 335. USCIS already has a pre-deprivation process; the agency has delineated the circumstances on which it may revoke deferred action it conferred based on a U visa petition, and thus subject people like Mr. Asencio to immigration detention. PM vol. 3, pt. C, ch. 5.C.1, 6) (discussing conditions for USCIS to "terminate deferred action" based on U visa BFD). Respondents can thus claim no legitimate interest in circumventing that process by revoking deferred action through enforcement and arbitrarily detaining Mr. Asencio.

84. Accordingly, without any procedural protections, Mr. Asencio has been deprived of due process under the Fifth Amendment.

**COUNT THREE**
**Violation of the Fifth Amendment**
**(Violation of Procedural Due Process)**

85. Mr. Asencio repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

86. Because "[a]rbitrary civil detention is not a feature of our American government," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), civil confinement is only permissible "in certain special and narrow non-punitive circumstances," where a "special justification" asserted by the government "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up).

87. Immigration detention only comports with due process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id.* (cleaned up). The only two accepted justifications for keeping someone in civil immigration detention are insufficient as applied to

Mr. Asencio.

88. "The first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility." *Id.* at 679.

89. Here, deportation is a "remote possibility" as Mr. Asencio's deferred action status protects them from removal and the status has not been properly revoked. *Id.* "Where an individual is protected from removal through deferred action, their detention serves no valid purpose." *Santiago v. Noem*, Case No. EP-25-CV-361-KC, 2025 WL 2792588 at *12-13 (W.D. Tex. Oct. 2, 2025). *See Ayala v. Bondi*, No. 2:25-CV-01063-JNW-TLF, 2025 WL 2209708, at *3 (W.D. Wash. Aug. 4, 2025) ("deferred action prevents recipients' removal from the United States").

90. Moreover, to have received deferred action in the first place, Mr. Asencio necessarily passed background checks and was vetted for national security and public safety risks. Thus, any dangerousness justification here would be specious, because Mr. Asencio has not engaged in any acts that would change that determination. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

91. Accordingly, because Mr. Asencio's detention is not justified by flight risk or danger concerns, it bears no reasonable relation to a legitimate government purpose, and thus violates Mr. Asencio's substantive due process rights.[6]

---

[6] A growing number of courts agree that detention and removal of individuals in deferred action status violates due process. *See, e.g., Sepulveda Ayala v. Bondi*, No. 2:25-CV-01063-JNW-TLF, 2025 WL 2209708 (W.D. Wash. Aug. 4, 2025); *Maldonado v. Noem*, No. 25-CV-2541, 2025 WL 1593133 (S.D. Tex. June 5, 2025); *Espinoza-Sorto v. Agudelo*, No. 25-23201, 2025 WL 3012786 (S.D. Fla. Oct. 28, 2025); *F.R.P. v. Wamsley*, No. 25-01917, 2025 WL 3037858 (D. Or. Oct. 30, 2025); *Patel v. Hyde*, No. 25-12518, 2025 WL 3169875 (D. Mass. Nov. 12, 2025); *Cruz Zafra v.*

**COUNT FOUR**
***Accardi* Doctrine**
**(Violation of the PM, Regulations, and Longstanding Policy and Practice)**

92. Mr. Asencio repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

93. The Supreme Court has long recognized that government agencies are required to follow their own procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Courts have regularly applied this principle to the immigration context. *See, e.g., Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004). The *Accardi* doctrine extends beyond just "regulations" to include, e.g., "internal operating procedures," "handbook[s]," "policy statements," and other evidence of an agency's "usual practice." *Id.* at 1162.

94. The USCIS Policy Manual lays out specific grounds on which deferred action—and its protection against detention—may be revoked. For deferred action based on a U visa Bona Fide Determination, USCIS identifies four scenarios on which it may revoke: (1) "if USCIS determines a national security or public safety concern is present," (2) "if USCIS determines the BFD EAD and deferred action is no longer warranted," (3) if "the Form I-918 Supplement B law enforcement certification is withdrawn" by the certifying agency, or (4) "USCIS determines the prior BFD EAD was issued in error." PM vol. 3, pt. C, ch. 5.C.

95. As for deferred action based on an applicant's position on the waiting list, revocation is only permissible if USCIS determines that the person no longer qualifies for the U

*Noem*, No. 25-00541, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025); *B.D.A.A. v. Bostock*, No. 6:25-CV-02062-AA, 2025 WL 3484912 (D. Or. Dec. 4, 2025); *Aguilar Gama v. Bondi*, 25-01925, 2025 WL 3559942 (W.D. Wash. Dec. 12, 2025); *Espinoza Cruz v. English*, No. 3:25-CV-919-CCB-SJF, 2025 WL 3676992 (N.D. Ind. Dec. 18, 2025); *Nevarez Jurado v. Freden*, No. 25-CV-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025); *O.A.M.R. v. Wofford*, No. 1:25-CV-01955-TLN-JDP, 2025 WL 3702171 (E.D. Cal. Dec. 21, 2025); *Mauricio Leon v. Noem*, Case 5:25-cv-02582-FMO-RAO (C.D. Cal. October 10, 2025).

visa. 8 C.F.R. § 214.14(d)(2)-(3).

96. Furthermore, Respondents' longstanding policy is that only USCIS—not ICE—has the exclusive authority to revoke deferred action conferred by USCIS in connection with a U visa petition, and that such revocation must be based on specific criteria. 8 C.F.R. § 214.14(d)(3) (U-visa waiting list "deferred action or parole may be terminated *at the discretion of USCIS*") (emphasis added).

97. Here, Mr. Asencio received deferred action through a Bona Fide Determination. Thus, any revocation of this deferred action must take place in accordance with the USCIS Policy Manual. Rather than following these procedures, Respondent ICE took matters into its own hands by stripping deferred action through detaining Mr. Asencio.

98. As the court in *ICWC* held, "by permitting ICE to de facto revoke deferred action instead of following USCIS procedure, and without applying any of the applicable criteria from the USCIS Policy Manual," Respondents "are not complying with their own policies for revoking deferred action" and are violating the *Accardi* Doctrine. *ICWC* PI Order at *40.

**<u>PRAYER FOR RELIEF</u>**

Wherefore, Mr. Asencio respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Mr. Asencio shall not be transferred outside the District of Massachusetts;

(3) Declare that Mr. Asencio's detention is unlawful;

(4) Issue a Writ of Habeas Corpus ordering Respondents to release Mr. Asencio immediately;

(5) Order that Respondents shall not retaliate against Mr. Asencio for filing this habeas petition;

(6) Order that Respondents do not re-detain Mr. Asencio if he is released, unless they make an individualized showing of changed circumstances;

(7) Award Mr. Asencio's attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law;

(8) Grant any further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Julia Ciachurski*
Julia Ciachurski
BBO# 709052
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
949-610-3533; jciachurski@pairproject.org
*Pro bono counsel for Petitioner*

Dated: July 9, 2026

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Julia Ciachurski, declare as follows:

I am an attorney admitted to practice law in the Commonwealth of Massachusetts. Because many of the allegations of this Petition require a legal knowledge not possessed by Petitioner, I am making this verification on his behalf. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 9, 2026.

*/s/ Julia Ciachurski*
Julia Ciachurski

**CERTIFICATE OF SERVICE**

I, Julia Ciachurski, certify that on this 9th day of July, 2026, I caused a copy of the foregoing Petition to be served on Respondents' counsel via the CM/ECF platform.

*/s/ Julia Ciachurski*
Julia Ciachurski