**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CESAR ASENCIO, | ) | |
| Petitioner, | ) | Case No. 1:26-cv-13161 |
| v. | ) | |
| DAVID WESLING, et al., | ) | LEAVE TO FILE GRANTED ON 7/22/2026 (Doc. No. 14) |
| Respondents. | ) | |

**REPLY IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

Through the instant Reply Memorandum, Petitioner Cesar Asencio ("Petitioner" or "Mr. Asencio") respectfully replies to the Opposition to his Petition for Writ of Habeas (Doc No. 10).

## I. INTRODUCTION

"When the government detains a noncitizen pending immigration proceedings, it must have a legitimate, non-punitive reason for doing so. Typically, the reason is straightforward: the government detains a noncitizen to ensure he is available for removal. But that justification rests on a critical premise—that the government actually *can* remove him." *Reales v. Director of Enforcement and Removal Operations*, --- F. Supp. 3d ---, 2026 WL 1090955, *1 (M.D. Fla. Apr. 22, 2026) (citations omitted). In its opposition, the government ignores this key fact: Mr. Asencio has been granted deferred action by the United States Citizenship and Immigration Service ("USCIS") and is protected from removal.

Instead, the government asks this Court to ignore the reasoning and certified class in *Immigration Center for Women and Children v. Noem*, --- F.R.D. ---, 2026 WL 1455004 (C.D. Cal. May 20, 2026) [hereinafter, "*ICWC*"]. The government also asserts that ICE complied post

hoc with the ICE 2011 and 2021 Policies[1] and that Mr. Asencio's continued detention is statutorily and constitutionally permissible.

The government's argument fails on all fronts. First, this Court has jurisdiction to hear Mr. Asencio's claims and is not statutorily barred from doing so. Mr. Asencio is challenging the legality of his detention and a habeas petition is the proper mechanism to do so. Second, this Court should follow the Central District of California's reasoning in *ICWC* and find that ICE's actions did not comport with the 2011 and 2021 Policies. *ICWC* also requires more than just compliance with the policies, which ICE did not do. Lastly, Mr. Asencio's initial, and continued detention, does not comport with due process. Accordingly, the Court should grant Mr. Asencio's request for **immediate release**. Mr. Asencio has continued to languish in ICE detention for nearly ten months, despite ICE's inability to deport him.

## II. ARGUMENT

### A. <u>This Court Has Jurisdiction To Review Mr. Asencio's Claims.</u>

A habeas petition is the proper vehicle for Mr. Asencio's claims. The government mischaracterizes Mr. Asencio's claims by attempting to dress it up as a civil suit. In doing so, they cite to several cases which were ultimately denied because the relief that the noncitizens were seeking through a habeas petition were statutorily barred pursuant to 8 U.S.C. § 1252.

For example, the government cites to *Oliveira v. Edlow*, No. 1:25-cv-12859, 2025 WL 3492110 (D. Mass. Dec. 4, 2025) (Sorokin, J.), which was originally denied for lack of jurisdiction.

[1] The 2011 Policy is ICE Policy Statement 10076.1. *See* John Morton, ICE Policy Statement 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (Jun. 17, 2011), available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf (last checked August 4, 2026). The 2021 Policy is ICE Directive 11005.3. *See* ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021), available at https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCentered ApproachNoncitizenVictims.pdf (last checked August 4, 2026).

That case was both procedurally and substantively different from the case at hand. First, the petitioners already had an administratively final order of removal. They had already been ordered removed by the immigration judge and their appeal dismissed by the Board of Immigration Appeals ("BIA"). *Id.* at 2. The BIA further denied a motion for stay, and no stays or petitions for review were filed with the First Circuit. *Id.* at 3. The petitioners also had a pending application for a U visa with USCIS. *Id.* Second, the petitioners were not challenging the legality of their custody (in this case, ICE's supervision of them pending removal or their placement on GPS monitoring). *Id.* at 4. Third, the petitioners' claims all "expressly target[ed] ICE's efforts to remove [p]etitioners while they still have pending requests before the BIA and USCIS." *Id.* On the other hand, Mr. Asencio is not asking for this Court to stay his removal. The government is not legally able to remove him. Mr. Asencio is still in pending withholding-only proceedings before EOIR. His application for withholding of removal was previously granted by the immigration judge, and DHS appealed that grant to the BIA. USCIS has also granted him deferred action, which means that he is further protected from removal from the United States until its expiration. *See DHS v. Regents of the University of California*, 591 U.S. 1, 27 (2020) ("The defining feature of deferred action is the decision to defer removal"); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1991) ("Approval of deferred action status means that, for the humanitarian reasons described below, no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.") (citation omitted); *see also Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1258, n.2 (11th Cir. 2012) ("Deferred action status . . . amounts to, in practical application, a reprieve for deportable aliens. No action (i.e., no deportation) will be taken ... against an alien having deferred action status.") (citation omitted); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n. 3 (9th Cir. 2001) ("Deferred

action refers to an exercise of administrative discretion by the [immigration agency] under which [it] takes no action to proceed against an apparently deportable alien based on a prescribed set of facts generally related to humanitarian grounds.") (internal quotations omitted).

The government also misleadingly cites to *Quichimbo Sumba v. Edlow*, 822 F. Supp. 3d 234, 238 n.3 (D. Mass. 2026), where the petitioners brought a separate APA/mandamus suit after a habeas petition was denied. The government fails to mention that the suits were seeking different avenues of relief: in the habeas petition, release from detention and an injunction against transfer and removal[2] and in the APA/mandamus suit, a preliminary injunction for a stay of removal until USCIS made a bona fide determination ("BFD") on the pending T visa application. *See Quichimbo Sumba v. Noem*, No. 1:25-cv-13625, 2026 WL 357649, *2 (D. Mass. Feb. 9, 2026) (habeas petition); *Quichimbo Sumba*, 822. F. Supp. 3d 234 (APA/mandamus action). The habeas petition was not denied because it was not the proper vehicle for the relief sought. Rather, it was denied because the Court found that the underlying removal order was valid and that removal was imminent, and *that the Court lacked jurisdiction to review those actions by the agency*. *Quichimbo Sumba*, 2026 WL 357649, *2 (citing 8 U.S.C. §§ 1252(a)(5), (b)(9), (g)).

A "suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (citing *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (district court, not court of appeals, had jurisdiction where plaintiffs' "habeas petitions challenged only the constitutionality of the arrest and detention, *not* the

[2] The petitioner also asked the Court to "require ICE to withdraw the unlawful handwritten 'departure order' and any related informal directives, and require ICE to complete deconfliction consistent with [Trafficking Victims protection Act]-implementing policies before any future enforcement action against [p]etitioners."

underlying administrative order of removal")). Specifically, section 1252(g) is not "a shorthand way of referring to all claims arising from deportation proceedings." *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482. Mr. Asencio is not challenging the reinstatement of his 2003 removal order or the commencement of withholding-only proceedings. *See Primero v. Mattivelo*, No. 1:25-cv-1142, 2025 WL 1899115, at *3 (D. Mass. July 9, 2025) (Talwani, J.) ("Section 1252(g) applies to only three discrete actions that the Secretary of Homeland Security may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders, and bars review of these three discretionary decisions in the deportation process.") (citing *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482-84) (cleaned up) (emphasis in original). Further, because Mr. Asencio's claim "arise[s] from the Government's grant of deferred action rather than from execution of his removal order", § 1252(g) does not strip the Court of jurisdiction." *Espinoza-Sorto v. Agudelo*, No. 25-23201, 2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) (citing *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863-64 (6th Cir. 2022) (holding that, by virtue of the petitioner's deferred action status under DACA, her removal order was "unexecutable" and, therefore, outside of the scope of § 1252(g))); *see also Patel v. Hyde*, No. 25-12518, 2025 WL 3169875, at *1 (D. Mass. Nov. 12, 2025) (Stearns, J.) ("At bottom, [the noncitizen] does not challenge the government's discretionary decision to execute a removal order; he challenges the government's refusal to honor USCIS's prior (unrevoked) grant of deferred action.").

The core of Mr. Asencio's claims is the legality of his detention. And as the Supreme Court has held, section "2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B. <u>It Is Permissible For This Court To Follow The Reasoning Of *ICWC*, And It Should Do So Here.</u>

Even if the Court finds that the preliminary injunction order in *ICWC* is not binding on Mr. Asencio, a class member, this Court can still find the Central District of California's decision persuasive and follow its reasoning. *See Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 648 F. Supp. 2d 226, 233 (D. Mass. 2009) ("District judges' opinions often contain persuasive observations. . . The parties should learn what the opinion has to teach and weave its wisdom into their own presentations.") (quoting *RLJCS Enterprises, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust*, 487 F.3d 494, 499 (7th Cir. 2007)). Mr. Asencio is not simply asking for habeas relief because he is a member of the Deferred Action class certified in *ICWC*. Rather, Mr. Asencio is asking this Court to order his release because the government's reliance on the 2025 Guidance leading to his October 2025 arrest was arbitrary and capricious (Count One), the government violated his procedural due process rights when it de facto revoked his deferred action grant and detained him without notice or an opportunity to be heard (Count Two), the government violated his substantive due process rights when it detained because his detention bears no reasonable relation to a legitimate government purpose (Count Three), and the government violated the *Accardi* doctrine when it permitted ICE to de facto revoke his deferred action instead of following USCIS procedure (Count Four).

The government cites to several cases in other district courts that have "declined to issue the same injunctive relief ordered in [*ICWC*]." Doc. No. 10 at 6. But Mr. Asencio is not asking for emergency injunctive relief here. Further, the noncitizens were seeking a stay of removal or other statutorily barred relief, rather than just release from detention. *See*, *e.g.*, *Raudo Choto v. Ladwig*, No. 26-0322, 2026 WL 1652576, at *1 (W.D. La. June 8, 2026) ("Petitioner seeks a stay of removal while his Habeas petition remains pending."); *J.R.S.B. v. Olson*, 2026 WL 1481267, at *4 (N.D.

Ind. May 27, 2026) ("Finally, the court does not reach J.R.S.B.'s argument that he cannot be subject to an immigration enforcement action because of his deferred-action status, or that the immigration judge violated his rights as a U-visa applicant during his hearing. . . Issues regarding his ongoing removal proceedings fall outside the scope of this court's review.").

### C. The Government Misunderstands And Misapplies *ICWC*.

The government asserts that the actions outlined by Acting Assistant Field Office Director Brian E. Sullivan ("Sullivan") in the attached declaration (Doc. No. 10-1) make clear that ICE complied with *ICWC*. To be clear, ICE's review of Mr. Asencio's custody status consisted of the following:

> "On or about July 10, 2026, the ICE initiated the appropriate review under ICE Directive 11005.3. The ICE Boston Field Office issued a recommendation to the Headquarters Responsible Official ("HRO") for continued detention.
>
> On or about July 11, 2026, the HRO concurred with the recommendation to continue detention of the Petitioner. ERO determined there are exceptional circumstances because the Petitioner poses an articulable risk of death, violence, or physical harm to any person."

Doc. No. 10-1. Not only does ICE's actions not comport with the 2011 and 2021 Policies, *ICWC* requires more than just "compliance" the 2011 and 2021 Policies.

#### 1. **ICWC** ***requires more than just ad hoc compliance with the ICE 2011 and 2021 Policies.***

In *Immigration Center for Women and Children v. Noem*, --- F.R.D. ---, 2026 WL 1455004 (C.D. Cal. May 20, 2026) [hereinafter, "*ICWC*"], the Court vacated the 2025 Guidance from ICE, which resulted in a "De Facto Revocation Policy." *ICWC*, 2026 WL 1455004, at *7. With the De Facto Revocation Policy, ICE does not honor USCIS grants of deferred action, instead pursuing immigration enforcement action against grantees. *Id.* "This amounts to a policy of ICE de facto revoking deferred action because the individuals are provided no process before ICE chooses to

disregard the USCIS grant of deferred action and instead pursues enforcement proceedings." *Id.*

The government attempts to argue that they complied with *ICWC* (and the 2011 and 2021 Policies) because of the cursory review of Mr. Asencio's file. This review was initiated on July 10, 2026, one day after this Petition was filed. The fact that they "reviewed" Mr. Asencio's file after he filed a habeas petition—and almost nine months after he was initially detained—does not absolve them of their legal obligations when they first detained Mr. Asencio.

Notably, the government makes no mention of any process or review that the government underwent when they first detained Mr. Asencio in October 2025. At that point in time, the 2025 Guidance was in effect. It is safe to assume that the government then relied on that guidance when it detained Mr. Asencio. The 2025 Guidance, and the De Facto Revocation Policy, is arbitrary and capricious. *See* Doc. No. 1. "It reversed decades of policy without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." *ICWC*, 2026 WL 1455004, at *35.

***2. The Government did not comply with the ICE 2011 and 2021 Policies.***

Additionally, as the government notes, this Court has already found that a U visa applicant is likely to show that "the issuance of the 2025 Policy, including the recission of the 2021 Policy, was arbitrary and capricious, in violation of the APA." *Oliveira v. Edlow*, No. 1:25-cv-13228, 2025 WL 3492110, at *7(D. Mass. Dec. 4, 2025). And despite the government's argument, ICE's continued detention *is* contrary to the decision. Sullivan's cursory statements in his declaration do not demonstrate compliance with the 2011 and 2021 Policies for several reasons.

As background, the 2011 Policy states that "[a]bsent special circumstances or aggravating factors, it is against ICE policy to initiate removal proceedings against an individual known to be

the immediate victim or witness to a crime." In Section 5.8 of the 2021 Policy, it states that "ICE should pursue civil immigration enforcement action against beneficiaries of victim-based immigration benefits only in exceptional circumstances, or where it does not appear that the criminal activity diretly stems from their victimization, and with approval from the applicable [Headquarters Responsible Officials]." "Exceptional circumstances" is defined in the 2021 Policy as existing when the noncitizen poses national security concerns or an articulable risk of death, violence, or physical harm to any person.

First, there is no indication in the record that the government sought approval from HRO justifying any future enforcement action against Mr. Asencio. There is no indication in the record that the government sought approval from the HRO within 48 hours following the enforcement action against Mr. Asencio. The government cannot now claim that they complied with the Policy when they did not seek approval from HRO until nine months after the enforcement action.

Second, exceptional circumstances mandate an *articulable* risk of death, violence, or physical harm to any person. There is no explanation as to what the risk is, to who the risk is, and why the risk could only be alleviated by Mr. Asencio's detention.

**D. Even if the Court Finds That The Government Complied With ICE Policy, It Should Still Find That They Violated Mr. Asencio's Procedural Due Process Rights.**

Procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Petitioner received no such opportunity to be heard. *See Patel*, 2025 WL 3169875, at *1 (noting that a noncitizen with deferred action "has not been provided with any opportunity to challenge or seek review of his detention before a court of appropriate jurisdiction, as due process would normally require"). To determine if a noncitizen's continued detention without a bond hearing satisfies the Due Process Clause, courts consider three distinct factors: (1) "the private interest that will be affected by the official

action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also Hernandez-Lara*, 10 F.4th at 27 (applying the *Mathews* factors to consider a due process claim as to immigration detention). As argued in the previously filed Petition, a review of the *Mathews* factors compels the finding that Mr. Asencio's incarceration violates his procedural due process rights under the Fifth Amendment of the U.S. Constitution. *See* Doc. No. 1.

### E. Even if the Court Finds That The Government Complied With ICE Policy, It Should Still Find That They Violated Mr. Asencio's Substantive Due Process Rights.

Further, and as previously, argued, Mr. Asencio's continued detention violates his procedural due process rights. On February 28, 2025, USCIS issued a Notice of Bona Fide Determination ("BFD") to Mr. Asencio. Doc. No. 10-1 at ¶ 14. The BFD process is a two-step process. First, USCIS first determines whether a pending petition is bona fide. Second, USCIS determines whether "the petition poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion." USCIS Policy Manual, Vol. III, Part C, Ch. 5. At the time that USCIS (a sub-agency of DHS) made its determination, it presumably reviewed any relevant immigration and criminal history of Mr. Asencio, including any dismissed charges. *See* Doc. 10-2. Since its February 2025 determination, there have been no changed circumstances to justify Mr. Asencio's October 2025 ICE arrest.

At the time of his arrest, ICE (another sub-agency of DHS) did not communicate any basis to Mr. Asencio for its decision to change his custody status. ICE did not notify him that it considered him a flight risk or danger to the community, despite the agency's previous determination. In the absence of a specific finding of a change in circumstance, Mr. Marc's

continued custody is not authorized by law or otherwise violates the Due Process Clause of the Fifth Amendment.

The government maintains that Mr. Asencio's detention is permitted under the Supreme Court's framework in *Zadvydas*. Doc. No. 10 at 14 (citing *Zadvydas*, 533 U.S. at 699). The procedural posture in *Zadvydas* differs from Mr. Asencio's in two ways. First, *Zadvydas* had to do with the question of indefinite definition, not an initial detention decision. *See Primero*, 2025 WL 1899115, at *5. The noncitizens in *Zadvydas* had been previously afforded discretionary review of their detention. *Id.* (collecting cases). That is not the case here. Second, "the petitioners in *Zadvydas* had final orders of removal without any subsequent grant of deferred action or other relief from enforcement of the order." *Primero*, 2025 WL 1899115, at *5. On the other hand, Mr. Asencio was granted deferred action prior to his detention that remains valid until 2029. "Although a detention of up to six months is presumptively reasonable under *Zadvydas*, *Zadvydas* does not give the government free reign to confine [noncitizens]." *Patel*, 2025 WL 3169875, at *1.

The government cites to a number of cases to support their proposition that the detention of noncitizens with final orders of removal and a pending U or T visa application is not unlawful. Doc. No. 10 at 13-14. That is not the issue here. Mr. Asencio has more than a pending application; he has <u>deferred action</u>. As such, he is protected from removal and this Court should join the number of other district courts across the country that have concluded that the detention of people with deferred action violates due process. *See* Doc. No. 1, at 20-21, n.6 (collecting cases). Because Mr. Asencio cannot be removed from the United States, the government has no compelling justification in continuing to detain him. *See Ayala v. Bondi*, No. 2:25-cv-01063-JNW-TLF, 2025 WL 2209708, at *4 (W.D. Wash. Aug. 4, 2025); *Patel*, 2025 WL 3169875, at *2 (ordering immediate release of noncitizen with final order of removal and U visa deferred action because "removal is not likely

in the reasonably foreseeable future”). For the same reason, Mr. Asencio’s case differs from the noncitizen in withholding-only proceedings in *G.P. v. Garland*, 103 F.4th 898 (1st Cir. 2024). Accordingly, his continued detention violates his substantive due process rights under the Fifth Amendment of the U.S. Constitution.

## III. CONCLUSION

Based on the foregoing, Mr. Asencio reiterates his request that the Court find his present detention by ICE to be unlawful and order his prompt release from immigration custody

Respectfully submitted,

*/s/ Julia Ciachurski*
Julia Ciachurski
BBO# 702059
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(949) 610-3633; jciachurski@pairproject.org

*Pro Bono Counsel for Petitioner*

Dated: August 4, 2026

## CERTIFICATE OF SERVICE

I, Julia Ciachurski, certify that on this 4th day of August, 2026, I caused a copy of the foregoing Motion to be served on Respondents’ counsel via the CM/ECF platform.

*/s/ Julia Ciachurski*
Julia Ciachurski